(90 Misc. Rep. 92)

DURKEE v. SMITH et al.

(Supreme Court, Special Term, Warren County. April, 1915.)

1. WILLS ⬤➡427—PROBATE—CONCLUSIVENESS.
    Under direct provisions of Code Civ. Proc., § 2625, a decree of the Surrogate Court admitting a will to probate concludes one a party to the proceedings as to the validity of the making and execution of the will.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 916; Dec. Dig. ⬤➡427.]

2. PERPETUITIES ⬤➡3—STATUTE—VALIDITY.
    As the rule against perpetuities is only statutory, and the Legislature may abrogate it, Gen. Municipal Law (Consol. Laws, c. 24) art. 7, permitting devises and bequests for the purpose of creating and maintaining public parks, libraries, etc., is not unconstitutional.
    [Ed. Note.—For other cases, see Perpetuities, Cent. Dig. § 3; Dec. Dig. ⬤➡3.]

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3.** CONSTITUTIONAL LAW ☞64—DELEGATION OF POWER—FORMATION OF CORPORATIONS.

Const. art. 8, § 1, provides that corporations may be formed under general laws passed by the Legislature. Gen. Municipal Law, art. 7, provides for devises for the purpose of creating public parks, libraries, etc., and that whenever such devise is made, the trustees shall become a corporation without the necessity of complying with further formalities. *Held*, that the provisions for the formation of corporations were not unconstitutional.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 91, 92; Dec. Dig. ☞64.]

**4.** WILLS ☞81—TESTAMENTARY POWER—RESTRICTIONS—CHARITABLE BEQUEST—VALIDITY.

Under Gen. Municipal Law, § 146, prohibiting any devise or bequest to certain charities of more than one-half of the estate of the testator over and above the payment of debts, in case he shall leave a spouse, child, or parent surviving him, an attempted devise and bequest of a testator's entire property after the expiration of his wife's life estate, while not valid as to one-half of the property, is valid as to the remainder.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 201, 202; Dec. Dig. ☞81.]

**5.** PERPETUITIES ☞6—SUSPENSION OF POWER OF ALIENATION.

Real Property Law (Consol. Laws, c. 50) § 42, declares that the absolute power of alienation is suspended when there is no person in being by whom an absolute fee in possession can be conveyed, and that every future estate shall be void in its creation which shall suspend the absolute power of alienation for a longer period than during the continuance of not more than two lives in being. A testator devised to his wife a life estate, with the provision that in case charitable devises in remainder were held void, his executors should take in remainder as joint tenants. *Held*, that as the executors might convey the fee, the devise to them was not invalid as a perpetuity; the charitable gifts having failed.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–53, 56; Dec. Dig. ☞6.]

**6.** WILLS ☞13—TESTAMENTARY POWER—RESTRICTIONS—EVASION.

While a testator may not evade the restriction of the statute forbidding the devise of more than half his property to charity where he leaves specified relatives surviving, by devising it to individuals apparently absolutely, but really under an understanding with them that they will carry out his wishes as to charitable disposition, the fact that such a devise was made by testator with the expectation that the devisees would carry out his wishes, and that they in fact intend to do so, will not invalidate the devise.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 32–34, 38, 39; Dec. Dig. ☞13.]

**7.** WILLS ☞93—SECRET TRUSTS—EVIDENCE.

Evidence *held* insufficient to establish that a testator, who devised property to one of the objects authorized by Gen. Municipal Law, art. 7, devised one-half of it to his executors in secret trust.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 222–224; Dec. Dig. ☞93.]

Action by Henry C. Durkee against Orville C. Smith, as executor and others. Judgment for defendants.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Beecher·S. Clother, of Glens Falls (Edward M. Angell, of Glens Falls, of counsel), for plaintiff.

L. M. Brown and J. A. Kellogg, both of Glens Falls, for defendants Louis M. Brown and others.

Salisbury & Rowe, of Saratoga Springs, for defendants Crandall and Wicks.

James McPhillips, of Glens Falls, guardian ad litem, pro se.

BORST, J.  The plaintiff brings this action for a partition of the real property left by Henry Crandall, deceased, claiming that the attempted disposition thereof by will is void.

Mr. Crandall died January, 1913, leaving a will dated December 30, 1902, with two codicils, dated, respectively, December 10, 1903, and May 24, 1911.  The will and codicils were admitted to probate in the Surrogate's Court of Warren County June, 1913, after a contest in which the plaintiff and the other heirs of Henry Crandall were parties. Mr. Crandall left him surviving his widow, Betsey W. Crandall, who died before the trial of this action, and certain relatives, cousins, of whom the plaintiff was one, and descendants of cousins.  The testator by his will gives his widow the use for her life of all his property after the payment of his debts.  The remainder, subject to such life estate, he gives to the defendants Brown, Smith, Little, Williams, and one William A. Wait, as trustees, in trust, to maintain a public library and public parks in Glens Falls, directing that they, as such trustees, should take and hold the property under the provisions of article 7 of the General Municipal Law of the state under the corporate name of "The Crandall Trust."  Mr. Wait died prior to the testator's death.  Directions are contained in the provisions of the will creating the trust with respect to the management of the property, which are not important in the consideration of this case.  By paragraph "Tenth" of the will, which follows the provisions giving the life estate to the widow and for the creation of the trust, the testator provides as follows:

"Tenth.  I intend to legally dispose of all my estate whatever by this instrument; and, to be more certain of doing so, I hereby provide and will that if any devise or bequest hereinbefore contained for any cause or reason is or shall be held to be unlawful, invalid or void, then in any and every such case or cases I hereby give, devise and bequeath any and all the property and estate whatever as to which the hereinbefore devise or bequest or any part of any such devise or bequest is or shall be held to be unlawful, invalid or void to said Louis M. Brown, Orville C. Smith, Russell A. Little, William A. Wait & Sherman Williams, not as trustees nor as tenants in common, but to them as individuals and absolutely, and jointly and as joint tenants, and to be held by them in joint tenancy."

By the first codicil, the testator recites that he has acquired since the making of his will certain property upon which stands a church erected for church purposes by John J. Harris, and he requests his trustees to expend from the income of his property so much as in their discretion is necessary and they lawfully may to maintain his grave and family plot with the church buildings and surrounding grounds and fences in good order as a token of respect and monument to the memory of

Mr. Harris. He expresses a desire that the Harris Church property shall not be sold, but does not make this as a direction, and then states:

"This instrument shall be allowed only such effect as it can legally have without impairing to any extent whatever, the provisions of my said will as a valid and effectual disposition of all my property."

By the second codicil, the testator authorizes the trustees named in his will to use any surplus income from his residuary estate not needed for the parks and library for the aid and instruction of children.

[1] The plaintiff was a party to the proceedings in Surrogate's Court admitting the will to probate. His appearance in that court makes its decree conclusive against his right to further question the validity of the making and execution of the will. Section 2625, Code of Civil Procedure.

[2] The plaintiff urges that the statute under which the trust is attempted to be created is unconstitutional, in that it authorizes the creation of a perpetuity, and delegates the power to form a corporation. The rule against perpetuities is statutory, and the Legislature by like statutory authority can abrogate it, and this they have done to the extent of allowing, under article 7 of the General Municipal Law, a devise of real estate and its proceeds for the purpose of creating and maintaining public parks, public libraries, and aiding and instructing children. The dispensation or rights of a charitable corporation to hold real property is, in effect, a repeal pro tanto of the statute against perpetuities, and has been sustained in numerous cases. Wetmore v. Parker, 52 N. Y. 450; Cottman v. Grace, 112 N. Y. 299, 19 N. E. 839, 3 L. R. A. 145; Bird v. Merklee, 144 N. Y. 544–550, 39 N. E. 645, 27 L. R. A. 423; Matter of Griffin, 167 N. Y. 71, 60 N. E. 284; Cong. Unit. Soc. v. Hale, 29 App. Div. 396, 51 N. Y. Supp. 704.

[3] Neither is there any force in the contention, made on the part of the plaintiff, that the statute is unconstitutional because it delegates power to form a corporation. The Constitution of the state (article 8, section 1) provides that corporations may be formed under general laws passed by the Legislature. The manner in which a corporation shall be created and come into being is left to legislative discretion and direction. By the General Municipal Law under consideration, the Legislature has seen fit to enact that a grant of property by deed or will to trustees for certain specified public purposes shall have the effect of forming the trustees into a corporation without the necessity of complying with further formalities which they might have but did not require. The trustees on the death of the testator, his wife then living, took a vested remainder in his property, and the corporation thereupon came into existence at that time by the very words of the statute, and hence there was no delaying the creation of the corporation. The delay was only in the time when possession of the property should pass to the trustees.

[4] The General Municipal Law provides (section 146):

"This article shall not be construed or held to authorize any devise or bequest whatever, * * * of more than one-half of the estate of the testator or testatrix over and above the payment of debts, liabilities and expenses, in case he or she shall leave a husband, wife, child, or parent him or her surviving."

By his will the testator first directs the payment of all his debts; next, he gives his wife, if she survives him, all his estate—

"for and during her natural life, such life estate to be accepted by her in full discharge of all claims on my estate whatever. * * * In case my wife shall not survive me, or if she shall survive me, then upon her decease I give, devise and bequeath all said residue above mentioned to [the parties named] as trustees and to their successors in trust. Such trustees and their successors shall be a corporation under the name of 'The Crandall Trust' and they shall take and hold said rest and residue [as a corporation for the purpose of] creating * * * and maintaining a public library and one or more public parks in said village of Glens Falls."

It was conceded on the trial of the action that the testator left at least $200,000 of real estate and $50,000 of personal estate.

As Mrs. Crandall survived her husband, the question is now presented, Did the testator devise or bequeath to the trust more than the one-half of his estate, and if he did, what effect will that have upon the trust devise? The estate of the testator for the purposes here considered is that which was left after the payment of debts. While it might well be assumed from the history of the testator's life as contained in the evidence, and in the absence of proof that his debts were small, if any, yet the amount of his debts is not necessary to determine the questions presented. Under the terms of the will the trust would take that part of the estate, "rest and residue," remaining on the death of the wife, were it not for the prohibition of the statute against more than one-half passing to the trust. It has been stipulated that more than one-half of the estate was bequeathed and devised by paragraph "Third" of the will. But although more than the one-half of the testator's estate is given to the trust, that will not aid the plaintiff. The one-half of the estate permitted by the statute to be given for the purposes of the trust will pass for that purpose, while the other one-half will pass to the trustees as individuals under the provisions of the "Tenth" clause of the will. The statutes of the state enacted prior to the one in question, limiting gifts for charitable purposes, uniformly provide that such gifts, in case they exceed the amount permitted, shall be valid to the extent authorized. The section of the statute now considered does not contain a similar provision, nor does it contain language from which it may be inferred that because the gift exceeds the limit, the whole gift fails. The statute (General Municipal Law), by its terms, "shall not be construed or held to authorize any devise or bequest * * * of more than one-half of the estate of the testator" after the payment of debts in the case of certain surviving relatives. No penalty, however, is attached against the attempt to devise or bequeath more than the one-half of an estate, and in its absence the intent of the testator will prevail to the extent at least permitted by the statute, as the scheme of the testator will not be destroyed; the extent only of it being affected.

[5] Against the validity of the "Tenth" clause plaintiff's counsel urges two objections: First, that the words, "to be held by them in joint tenancy" creates an unlawful suspension of the power of alienation; second, because the devise in the "Tenth" clause of the will

was upon a secret trust, intended to evade the provisions of the statute. Section 42 of the Real Property Law provides that:

"The absolute power of alienation is suspended, when there are no persons in being by whom an absolute fee in possession can be conveyed. Every future estate shall be void in its creation, which shall suspend the absolute power of alienation, by any limitation or condition whatever, for a longer period than during the continuance of not more than two lives in being at the creation of the estate."

We may therefore have more than two lives in being in whom an estate may be vested, and yet so long as they have an absolute power of conveying a fee in possession, it is not violative of the statute. Where there are living parties named, as we have here, who have unitedly the entire right of ownership and can convey an absolute fee in possession, the statute can have no application.

[6, 7] As to the second objection urged against the effectiveness of the "Tenth" clause, plaintiff's contention is that the devise in this clause was upon a secret understanding or agreement that the donees named should turn over to the corporation formed under the trust clause of the will whatever interest in the property they might receive as individuals under it; that such secret understanding, being designed to evade and defeat the provisions of the statute, was fraudulent in law and void, and that therefore the individual donees named in clause "Tenth" should be declared trustees ex maleficio for the plaintiff and the other heirs of any property which might otherwise pass under that clause. It is undoubtedly true that if there was an agreement such as contended by plaintiff's counsel, express or implied, between the testator and one or more of the trustees, the effect of it would be to vitiate and invalidate any devise or bequest to the trustees as individuals. The law does not permit the testator and the trustees as individuals to enter into such an agreement to defeat the statute and to do indirectly what they could not do directly. Amherst College v. Ritch, 151 N. Y. 282, 45 N. E. 876, 37 L. R. A. 305; Dobie v. Armstrong, 160 N. Y. 584, 55 N. E. 302; Matter of Will of Keleman, 126 N. Y. 73, 26 N. E. 968.

Mr. Crandall undoubtedly desired, if it could be done, that the whole of his estate after the life estate of his wife should pass to "The Crandall Trust." This is not only expressed in the terms of the will, but is well supported by the evidence. While, however, there is evidence that the trustees, one or more, knew that the testator desired that his property should go to "The Crandall Trust," yet there is no evidence that they knew of any expectation on his part that any part of it which could not, under the law, pass to them as trustees for the purpose of the trust, and which might come to them under the "Tenth" clause of the will, should be devoted otherwise than to their individual uses as stated in that clause. The evidence is entirely barren of any promise, express or implied, on the part of the individuals named in the "Tenth" · clause that they would take whatever property might come to them under its provisions and devote it to the purposes of "The Crandall Trust." The defendant Brown was a witness before the surrogate and his evidence given there was offered by plaintiff's counsel as evidence in this case. He there testified:

"I have no recollection that I had any talk with him [testator] in regard to the tenth clause of the will. I have no recollection that he ever gave me any instructions as to what the individuals were to do in case they took this property as individuals. I never had any talk with him at all as to what would be done with it. I never heard any conversation between Mr. Crandall and any of the other trustees as to what would be done with the property in case it came to the trustees as individuals. I never heard any conversation between Mr. Crandall and any of the other individuals named in the will in any way relating to the will. I had no knowledge, at any time in Mr. Crandall's lifetime, that any of these other individuals had ever been spoken to by him at all. I have since his death heard he had spoken to one of them anyway; Mr. Williams told me. He left no written instructions which have come to my knowledge or information as to what should be done with the property in case it came to the trustees as individuals; he never gave me any instructions what to do with it if it came to me individually."

In the Amherst College Case, cited supra, where a similar question was under consideration, the court said:

"While a testator may make a gift to a legatee solely for the purpose of enabling him, if he sees fit, to dispose of it in a particular way, still if there is no promise by him, either express or implied, to so dispose of it, and the matter is left wholly to his will and discretion, no secret trust is created, and he may, if he chooses, apply the legacy to his own use. When it clearly appears that no trust was intended, even if it is equally clear that the testator expected that the gift would be applied in accordance with his known wishes, the legatee, if he had made no promise, and none has been made in his behalf, takes an absolute title, and can do what he pleases with the gift. Whatever moral obligation there may be, no legal obligation rests upon him."

Edson v. Bartow, 154 N. Y. 215, 48 N. E. 541, illustrates and points out the difference between a case where a promise is made by a legatee as to what he will do with a bequest or devise if it comes to him and one, as in this case, where there was no such promise. In the latter case the court holds no promise can be implied. In Rutherfurd v. Carpenter, 202 N. Y. 532, 95 N. E. 1139, an action had been brought to enforce an alleged promise by the legatee made to the testator, that he would devote his legacy to a certain purpose. It was contended that a secret trust was created. The Court of Appeals reversed the Appellate Division (134 App. Div. 881, 119 N. Y. Supp. 790) in that case on the dissenting opinion of Judge Ingraham, who there said:

"In the absence of an express request of the defendant to pay this legacy to the plaintiff, or any representation or statement upon which the testatrix relied that the defendant would pay the legacy, or the existence of such a position that the defendant was bound to express his refusal or lead the testatrix to believe that he would comply with her request. I do not see how any promise can be implied."

The proof falls short of establishing a secret trust, and as more than the one-half of the testator's estate was attempted to be granted for the purposes of the trust, the trustees take the one-half for that purpose and take the other one-half as individuals freed from the provisions of the trust and to the exclusion of the plaintiff and defendant heirs. On the trial of the action, counsel for trustees announced that he believed they should carry out the testator's intent and see to it that all his property was used for the purposes of "The Crandall Trust." There is no legal obligation, however, resting on them to do this as to any of testator's property which might come to them as in-

dividuals under the "'Tenth" clause of his will. As honorable men, knowing that it was the testator's wish that his property should be utilized for the benefit of the people in the city in which he lived and died, it may well be they will take pride in complying with that wish.

This disposition of the case is made with less hesitation because of the peculiar facts surrounding it. Henry Crandall started life as a poor boy, with but few of the advantages that come to most of the youth of the present day. By industry and frugality he amassed a considerable fortune. He lived to be past 82 years of age, leaving no relatives who had any claim upon him so far as the evidence discloses, or who could, because of feelings of friendship, appeal to his charity. Against adverse conditions he made his life a success, at least in a financial way, and there evidently came to him a feeling that he should like to perpetuate his name, as well as bring to others in Glens Falls opportunities and pleasures that were denied him in his lifetime. He evolved the idea of leaving his fortune for such purposes, and his wishes should be complied with so far as the law permits.

A decision and proposed findings may be submitted in accord with this opinion.